**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

**MONTY L. COOPER, JR.**                                                      **PLAINTIFF**

V.                   **CASE NO.: 4:11CV00606 BD**

**MICHAEL J. ASTRUE, Commissioner,
Social Security Administration**                                            **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

Plaintiff Monty L. Cooper, Jr. brings this action for review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his claim for Supplemental Security Income ("SSI") benefits under Title XVI of the Act. For reasons that follow, the decision of the Administrative Law Judge ("ALJ") is reversed and remanded.[1]

**I.**     **Procedural History:**

Mr. Cooper protectively filed his application for SSI on April 13, 2009, alleging an onset date of April 13, 2009. (Tr. 34, 68) He claims disability due to antisocial personality disorder, and patella-femoral syndrome of the right knee. (Tr. 28-29, 68-69) His claims were denied initially and on reconsideration. (Tr. 72-75, 79-80) At Mr. Cooper's request, the Administrative Law Judge("ALJ") held a hearing on January 5, 2010. (Tr. 24-66) On June 21, 2010, the ALJ issued a decision denying benefits, and on June 13, 2011, the

---

[1] The parties have consented to the jurisdiction of the Magistrate Judge. (Docket entry #4)

Appeals Council denied Mr. Cooper's request for review. (Tr. 1-3, 11-19) Thus the ALJ's decision became the Commissioner's final decision for purposes of judicial review.

## II.     Background:

Mr. Cooper was 34 years old at the time of the hearing. (Tr. 129) He had a sixth-grade education. (Tr. 58, 235) He attempted seventh grade but never completed it. (Tr. 58) He had past work experience as a furniture mover. (Tr. 40-41, 178) At the time of the hearing, Mr. Cooper lived with his mother most of the time but occasionally stayed with a friend. (Tr. 131)

At the hearing, Mr. Cooper could not remember his mother's mailing address or his son's birthday. (Tr. 30, 32) He testified that he gets anxious around people, cannot raise his son alone, overcooks food when trying to use the microwave, cannot count change or pay bills, does not shop, and does not have a valid drivers license. (Tr. 37-39, 46, 50-53) He also testified that he had taken the GED exam three or four times but had failed each time. (Tr. 33)

## III.    Decision of the Administrative Law Judge:

In his decision,[2] the ALJ determined that Mr. Cooper had not engaged in substantial gainful activity since his alleged onset date and that his antisocial personality disorder, learning disorder, and right knee injury were "severe impairments," as that term

---

[2] The ALJ followed the familiar five-step analysis, determining: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. § 416.920(a)-(g).

is used in social security disability cases. (Tr. 13) He considered listed impairments 12.08 and 12.09, but found that Mr. Cooper did not have an impairment, or combination of impairments, meeting or medically equaling a "listed" impairment. (Tr. 13-14) 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), .925, and .926)

  The ALJ determined that Mr. Cooper retained the residual functional capacity to lift and carry fifty pounds occasionally and twenty-five pounds frequently, sit for about six hours during an eight-hour workday, and stand and walk for almost six hours during an eight-hour workday. Additionally, he found that Mr. Cooper was able to understand, remember, and carry out simple, routine, and repetitive tasks and respond appropriately to supervision and usual work situations; but he could have only occasional contact with co-workers and no contact with the general public. Further, the claimant could perform low-stress work (defined as occasional decision making and occasional changes in workplace settings). (Tr. 14)

  The ALJ concluded that Mr. Cooper could not perform any of his past relevant work, but that he could perform other jobs that exist in significant numbers in the national economy, such as packing machine operator, industrial cleaner, and sewing machine operator. (Tr. 19-20)

**IV.     Discussion:**

    A.     *Standard of Review*

In reviewing the Commissioner's decision, this Court must determine whether there is substantial evidence in the administrative record to support the decision. 42 U.S.C. § 405(g). "Substantial evidence is evidence that a reasonable mind would find adequate to support the ALJ's conclusion." *Nicola v. Astrue*, 480 F.3d 885, 886 (8th Cir. 2007). In reviewing the record as a whole, the Court "must consider the evidence which detracts from the Commissioner's decision, as well as the evidence in support of the decision," but the decision cannot be reversed, "simply because some evidence supports a conclusion other than that of the Commissioner." *Pelkey v. Barhart*, 433 F.3d 575, 578 (8th Cir. 2006).

    B.     *Listed Impairment*

Mr. Cooper claims that the ALJ's findings are not supported by substantial evidence because the ALJ failed to evaluate whether he met listing 12.05 for mental retardation.[3] The Court agrees.

"Mental retardation," as defined by Social Security Listing 12.05, refers to "significantly sub-average general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence

---

[3] At the hearing, Mr. Cooper's lawyer argued that he met listing 12.05C. (Tr. 29) In his opinion, the ALJ referenced only listings 12.08 and 12.09.

demonstrates or supports onset of the impairment before age 22." 20 C.F.R. Part 404, Subpart P, Appendix 1, Section 12.05. The required level of severity for this disorder is met when the requirements in paragraphs A, B, C, or D are satisfied.

Under Listing 12.05C, a claimant suffers from the required severity level if he shows "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05C; *Maresh v. Barnhart*, 438 F.3d 897, 899 (8th Cir.2006).

As Mr. Cooper acknowledges, an ALJ's failure to mention a particular listing is harmless error if substantial evidence shows that the listing was not met. See *Goose v. Apfel*, 238 F.3d 981, 984 (8th Cir. 2000) The evidence here, however, indicates that the Commissioner had previously awarded Mr. Cooper SSI benefits, but benefits were lost when Mr. Cooper was incarcerated. (Tr. 235, 334-26)

In 1997, before Mr. Cooper turned 22, Steve A. Shry, Ph.D., estimated that Mr. Cooper had an intelligence quotient (IQ) of 69 or lower and diagnosed mild mental retardation. (Tr. 354-55) In 2000, Dr. Shry administered the Wechsler Adult Intelligence Scale III (WAIS III) test to Mr. Cooper. Mr. Cooper's scores were 58 on the verbal test and 55 on the performance test, giving him a full scale score of 52 and bringing him within the low end of the mildly mentally retarded range. Additionally, during the same evaluation, Dr. Shry found evidence of two or more areas with significant limitations in

5

adaptative functioning. (Tr. 356-59) Dr. Shry considered the IQ test a valid and reliable indicator of Mr. Cooper's current functioning level. (Tr. 358) A person's IQ score usually does not improve with age and is presumed to remain stable over time. *Muncy v. Apfel*, 247 F.3d 728, 734 (8th Cir. 2001).

In 2005, Nancy J. Toombs, M.D., evaluated Mr. Cooper. She administered the WAIS-III test. Mr. Cooper scored 66 on the verbal test and 57 on the performance test, with a full scale IQ of 59. (Tr. 376) Dr. Toombs did not believe the test scores were an accurate estimate of Mr. Cooper's overall intellectual functioning, but estimated his IQ to be in the high 60s to low 70s range. (Tr. 376) Dr. Toombs's diagnostic impressions were at Axis I, rule out anxiety disorder; at Axis II, antisocial personality disorder; at Axis III, "mild MR versus borderline intellectual functioning." (Tr. 376) She found his main problem to be getting along with authority. (Tr. 377)

Dr. Shry administered the WAIS III to Mr. Cooper again in 2009. His verbal score was 68, his performance score was 67 and his full scale score was 65. (Tr. 291) Dr. Shry found that Mr. Cooper was not adequately motivated and that the REY screening indicated the possibility of malingering. (Tr. 293)

Considering Mr. Cooper's prior IQ scores within the listing range, Dr. Toombs's diagnosis of antisocial personality disorder and either mild mental retardation or borderline intellectual functioning, and the ALJ's conclusion that Mr. Cooper's knee

injury was a severe impairment, there is substantial evidence in the record warranting an evaluation by the ALJ as to whether Mr. Cooper met listing 12.05C.[4]

### V.    Conclusion:

After consideration of the record as a whole, the Court concludes that the Commissioner's decision is not supported by substantial evidence.  Therefore, the Commissioner's decision is reversed and remanded for action consistent with this opinion.  This is a "sentence four" remand within the meaning of 42 U.S.C. § 405(g) and *Melkonyan v. Sullivan*, 501 U.S. 89 (1991).

IT IS SO ORDERED this 26th day of October, 2012.

_____
UNITED STATES MAGISTRATE JUDGE

---

[4] The Court acknowledges that the ALJ's opinion discussed Mr. Cooper's IQ scores but did so only in the context of evaluating his credibility.  (Tr. 15-16)